Very well, thank you. Your honors, the central issue in this case is whether Mr. Barboza was excused from further efforts to exhaust the plan's appeal procedures because those procedures failed to comply with the Department of Labor regulations, in particular by the plan's failure to issue a decision within 90 days of his appeal. The facts really are straightforward. Mr. Barboza was denied his claim for disability benefits in May of 2007. He timely appealed within 180 days on November 15, 2007. The plan wrote a letter saying that they needed to hold a hearing, which by itself doesn't provide special circumstances for that extension, but even assuming that there were special circumstances, the hearing itself was beyond 90 days from the appeal, and the decision itself was issued two months after the hearing, 157 days after the appeal. Now, the central claim for the defendants, of course, is that their regulations were lawful because they were entitled to take advantage of the so-called quarterly meeting rule. Now, the preamble to the regulations, we think the text of the regulations, the question and answers promulgated by the department shortly after the regulations, and, of course, the amicus brief itself all show, we believe, that the quarterly meeting rule, as far as disability claims, which this was undisputably, only applies for a multi-employer plan. And there's just no issue here that this is not a multi-employer plan, and they have not claimed that. So, based on the text of the regulations itself, since the decision was not, the plan was not entitled to take advantage of any quarterly meeting rule, the decision was very untimely, and, therefore, the suit should not have been dismissed for failure to exhaust. Do we have a problem with jurisdiction in this case? I don't believe so, Your Honor. The case was dismissed without prejudice, that's true, but the action was dismissed, not merely the complaint, and several decisions of this Court, as well as many other cases, were dismissed without prejudice, but the action was dismissed without prejudice. So the fact that the case was dismissed without prejudice of the action is a final decision that's appealable. So your interpretation of what the district judge was doing was that he was concluding the action but indicating that if they did finalize their problems with exhaustion, they could come back and file another action. That's your interpretation of what he was trying to do? Well, theoretically, by the dismissal without prejudice, he would have allowed the Mr. Barbosa to come back to court, but the planned procedures themselves made it impossible for him to cure the lateness of the appeal at that point if he had to pursue it. Well, I understand. But I take it what you're saying is that the without prejudice indicates that he would accept another filing once, as he thought the situation was, there was no exhaustion yet. I think so. Okay. Thank you. Thank you. Let's see. Who's next? Are you with the representative of the government, the Department of Labor? I'm sorry, sir. I'm here representing the Department of Labor. Okay. Why don't we hear from you now, and then we'll hear from the plan after this. Thank you, Your Honor. May it please the Court. My name is Marcia Bove, and I represent the Secretary of Labor. Excuse me. Let me just make sure we have the clock straight. We're starting with seven minutes? Yeah. She started the clock, Your Honor. Okay. Thank you. For disability claims, the controlling provision is I-3 of the claims regulation, and that establishes a 45-day time limit for resolving the disability claims. That time limit can be extended by an additional 45 days, but where that occurs, it's necessary to provide before the expiration of the first 45 days, the claimant with a the circumstances, the special circumstances that require the extension, and it should also provide a projected date for deciding the claim. The record here has a letter dated December 26, and that's at ER 79, and that letter on its face does not comply with the requirements of the regulation, but even if we exceeded that time frame. The regulation recognizes one exception to the 45-day time rule, apart from the additional 45 days where special circumstances warrant it, and the only exception to the 45-day time limit is for a multi-employer plan, recognizing that you do have the option to extend by 45 days. It's undisputed that this is not a multi-employer plan, and the quarterly meeting rule is simply not available to this plan. The claim reg, which is the time frame established in I-3, we believe because it explicitly on its face makes clear that the only exception to the time, to the 45-day deadline, is for multi-employer plans in the context of disability claims. We believe the regulation is clear on its face. However, Is it your argument that there are really two reasons why the 45 days cannot be extended? A, that there's a Mulder disability plan, and B, that this was a disability claim, and in both of those cases, in either one of those cases, they don't get more than 45 days to exhaust? Well, yes, Your Honor. But even if we took as a valid letter that December 26th letter at ER-79 and granted the additional 45 days, which is available under special circumstances, they would still have exceeded the time frame for If exceeded the 90 days. But my question is, if there has been just a disability claim, no multiple employment plan, that would be sufficient to keep it at the 45 plus 45 alone? Yes. But here you have both that and the multi-employer plan. Is it the position of the Department of Labor that under either circumstance, the response has to be done within 45 or 90 days? Yes, Your Honor. Pardon? If I understand your question correctly, yes. Yeah. This is not a multi-employer plan. And we believe that an ordinary disability claim, you get 45 days, which you can extend by 45 days. Right. If we concede that that letter that they sent on December 26th was valid, which on its face it isn't, they get no more than 90 days. And just to come back to the text of the regulation, we believe that because I3 on its face makes clear that the quarterly meeting rule is not available to any plans other than multi-employer plans. We don't believe the regulation is ambiguous. But if there were any ambiguity, that ambiguity is resolved by the text of the preamble to the regulation, which makes clear that the quarterly meeting rule is only available to multi-employer plans when the claim at issue is either a disability or a health care claim. And it's also made clear by subsequent guidance issued in the form of frequently asked questions and answers. And it happens to be D7, where the same point is made, the restriction to multi-employer plans in the context of disability claims. And each of these points would have clarified any ambiguity. Were our regulations susceptible to more than one reasonable interpretation, although we don't believe that it is, any ambiguity would have been resolved in all of these circumstances. Because the department's brief in this matter in and of itself, the preamble, which makes clear that only multi-employers may use the quarterly meeting rule and explains why, and that was to ensure that income replacement needed by people who are disabled and unable to work would be provided promptly. And the subsequent guidance all resolve any possibility of an ambiguity here. And I'd also like to point out that the statute provides jurisdiction for an individual benefit claim under 502A1B. And the Court erred in concluding that, in dismissing this, because Mr. Barboso was entitled to proceed to court under Section L of our regulation. And it also erred in dismissing the independent fiduciary breach claim in which Mr. Barboso makes allegations, which on the face of the plan are obviously true, that this plan contains several terms that violate the claims reg. And while it isn't uncommon to find a plan that enforces its procedures in a manner that violates the claims reg, it's extraordinary to find a plan that on its face contains several terms that are not consistent or are — that violate the claims reg. And that claim was properly before the Court under 502A3. And Mr. Barboso was entitled to proceed with his independent, separate fiduciary breach claim. Thank you, Ms. Boole. Thank you, Your Honor. Good morning. Good morning, Judge Silverman, Judge Wallace, Judge Noonan. May it please the Court. I'm Brendan Begley, here on behalf of defendants and appellees in this matter. I want to focus on the quarterly meeting rule, if that is all right with the Court. And I want to straighten out a question that Judge Wallace asked the Department of Labor regarding whether or not the multi-employer plan is subject to a 45-day limitation. I don't think that's correct. If you're a multi-employer plan, you get the quarterly meeting rule. And so you have to decide it by the next quarterly meeting, not within 45 days. Is this a multi-employer plan? No, it's not a multi-employer plan. Why do you get the benefit of the quarterly meeting rule, then? That's a great question, and that's exactly what I want to get to. I have to say, when I found out the Department of Labor was amicus in this case and was going to interpret its own regulation, I felt a little bit like I was lost at sea. And so I asked if I could be some – inject some levity. I asked the Coast Guard at my office to help me with these flotation devices to put up the regulation. I've also handed out the regulation. It's printed exactly like it is on here. You've heard the Department of Labor say that the regulation is clear on its face. And so under our – and it's interpreted by Christensen at the U.S. Supreme Court – you only defer to the Department of Labor if the regulation is ambiguous. And even at that, you only defer to them if their interpretation of the regulation is consistent and not internally self-contradictory. I just wondered, do you think these regulations are crystal clear? I think it's crystal clear if you follow it through. There's a lot of twists and turns in it. I think it's clear enough if you follow it through that it shows that we should be entitled to the quarterly meeting rule. Well, what I'm getting at is, of course, your burden is if, in fact, we're going to give Chevron deference. We give Chevron deference to statutes that they're entitled to. But here it's their regulation, and that's a double deference. So I guess what we have to say is, Your Honor, I think under our, as interpreted by Christensen or as modified by Christensen, you only do – you only defer to them, you only have to defer to them if it's ambiguous. Number two, their interpretation of it is internally inconsistent. Would it be inconvenient or inappropriate for me to step over here to kind of go through it?   We won't be able to record you. I think I can read it from here, then. We have the charts you gave us, too. Very good. So I think I can read it from here. You know, you start – you'll notice the left and the right, they're both the same at the top. It's sub I. This is the regulation that deals with when claim determinations have to be made. The bottom part of the one on the left side is sub part two, which deals with group health plans, and on the right, it's disability claims. So right at the top, it says, except as provided in I1II, which is the quarterly meeting rule for plans in general, and under I2, which is group health plans, and under I3, which is disability plans, claims have to be, you know, dealt with basically within 60 days. However, there's an exception under what I'm going to call I or I1. That's the quarterly meeting rule, I2. In and of itself, it appears to apply to all plans. Now, let's take group health plans, right? I1I says group health plans is an exception to I1. The way that they did group health plans, they never, ever refer back up to I1. I2, I'm sorry, yeah, I2 group health plan says in the case of a group health plan, you have to notify the claimant in accordance with paragraphs I2I through III. All self-contained in I2. Group health plans, you have to make these determinations within all this stuff within I2. You don't bounce around. You stay right there. You compare that to I3 now. That's disability plans. Except as provided in I32 of this section, which is the quarterly meeting rule for multi-employer plans, that's not us, claims involving disability benefits shall be governed by I1. It sends you back up to I1. Not just I1I, all of I1, which includes the general quarterly meeting rule for all plans, multi-employer plan or otherwise. For you to accept the Department of Labor's interpretation, what you have to do then is under I3, you have to either read in the words I1I but not I1II, or you have to strike out that part that says claims shall be governed by I1. When all the dust settles, what's the bottom line of this? When do you have to rule on an appeal, on a claim? At the next quarterly meeting. Now, there's some redundancy in my interpretation. Admittedly, there is some redundancy, but when you apply the canons of statutory interpretation, I think the courts are far more flexible on redundancy. You know, in California, we have this kind of fancy-sounding axiom of law. It's superfluidity does not vitiate. However, Judge Noonan was on a panel that rendered a decision last week that I think is a much more practical way to say it. It's the belt and suspenders analogy, where somebody who wears a belt and suspenders doesn't need both really to hold up his pants. It just shows that he's being very cautious in making sure that they stay up. And one doesn't rule out the other simply because he wears both. That's the rule of redundancy. And, in fact, the Ninth Circuit en banc has said redundancy is to be avoided where possible, not at all costs. However, it is a far more striking breach of statutory interpretation to strike words out of a regulation or to insert them in there when they don't exist. Which is the section that says you would have to rule at the next quarterly meeting? One, I'm sorry, I-1-double-I. In the case of a plan with a committee or board of trustees designated as the appropriate name fiduciary that holds regularly scheduled meetings at least quarterly, paragraph 1 shall not apply, the 60-day rule, the general 60-day rule, and instead the appropriate name fiduciary shall make a benefit determination no later than the date of the meeting of the committee or board immediately follows the plan's receipt of a request for review. Now, further, you know, specific rules can't control over general ones. That's true. And on its face it would look like I-1-double-I, the quarterly meeting rule that gets applied to all plans. That does look like a general rule. But when you get down then to disability claims, which is more specific, that's I-3, it's narrowly, you know, focused on disability claims, it bumps you right back up into I-1. And so, therefore, I-1 becomes like a subset of I-3. And so it is more specific. And so you have this general rule, all plans get the quarterly meeting rule. Then you get down to this specific rule, disability claims. We're going to handle these a little bit more narrowly. You get 45 days instead of 60. Oh, and by the way, we bump you back up into I-2, the quarterly meeting rule for all plans. And so this is just as specific as 3-double-I, which is the multi-employer plan quarterly meeting rule. Okay. Look at the section that says disability claims. Yes. On the right side, your right chart. Right. Little I says they are supposed to be decided within 45 days instead of 60. Correct. Except as provided in I-3-double-I, claims involving disability claims shall be governed by paragraph I-1. Sends you back up to I-1. And then the next paragraph. Takes you out of the 45-day requirement. Next paragraph, in the case of a multi-employer plan, then you get a different rule. Multi-employer plan gets the quarterly meeting rule. So do plans in general under I-1-double-I. They're both on par. That harmonizes the rule. It's redundant. It is redundant. But, again, that's belt and suspenders. Interpreting the statute in a way that, you know, allows some redundancy should be avoided if possible, not at all cost. There's no flexibility for striking words or inserting words into a regulation to interpret it the way they ask you to. Well, the government will say that they've eliminated redundancy by the preamble. That's an interesting argument. The preamble does not appear in this regulation, however. The preamble that they're referring to appears in the, what's it called, the Federal Register, 65 Fed Reg, something or else, something like that. You have to keep in mind the whole point of these regulations is twofold. One is, of course, to make sure that these claims are administered in a timely fashion. But, two, it's also to allow plans to preserve their assets. That's the whole purpose of the quarterly meeting rule. Otherwise, you know, you're running from one appeal to another. And so, you know, you've got people in different parts of the state that have to come together to hear these appeals. Doesn't that defeat your argument? I mean, you're telling me how you could do it this way. But you could do it the opposite way. Isn't that the type of ambiguity that we defer to the Department of Labor to clarify? I don't follow, Your Honor. I'm sorry. Well, you've pointed out how you could go through and benefit your client and come out the way you think the district court did. But the Department of Labor shows a different way. Even though it's in a preamble, it's in another place. But if it's their regulation, why wouldn't their interpretation of it trump your interpretation of it? Because their interpretation of it violates rules of statutory construction and, therefore, is untenable. And under our and Christensen, if their own interpretation is not reasonable on its face or self-contradictory, it's not entitled to any deference at all. My interpretation is not self-contradictory. It does require some redundancy. You have to tolerate some redundancy, some belts and suspenders. But my interpretation does not require you to insert words into the regulation that are not there or to strike words in the regulation that are there. That's what you have to do in order to adopt their interpretation. We have to confront actually telling the secretary that we don't accept the secretary's interpretation of the secretary's rules for these reasons, A, B, C. That's what we'd be required to do. Yes, Your Honor. Frankly, that's true. Do you have other copies of this? Could we have copies made? I believe they've been distributed. There's only one copy up here, apparently. Each judge should have one copy. I'm sorry. I don't have a copy. I have an extra copy. I'd be happy to provide it to you. Why don't I have a copy? I just want to emphasize that I think Judge Silverman asked, what about this 45 days in I-3-I? And I just want to make sure that I made that clear. A period of 45 days instead of 60 days shall apply to Paragraph 1, the general I-1. It says you have to administer these claims. But then I-1-I-I gives you this exception, this quarterly meeting rule for all plans. The Department of Labor wants you to believe that that doesn't apply because there's I-3-I-I, which says multi-employer plans get the quarterly meeting rule. That's redundant. That's true. But it's belt and suspenders. You can have redundancy, and that harmonizes the statute. To adopt what they're saying, you have to eliminate that exception in I-3. Except as provided in multi-employer plans, claims involving disability benefits shall be governed by I-1. I-1 includes I-1-I-I. You have to eliminate that in order to say only multi-employer plans get the quarterly meeting rule. You cannot read the regulation that way if it requires you to ignore words that are in there or to insert words that are not. You'd have to insert words. The alternative would be to insert, except as provided in I-3-I-I, claims involving disability benefits shall be governed by Paragraph I-1, single I only. You'd have to insert that single I in there in order to keep I-1-I-I from being included with it as well. Unless there are other questions, I'd be happy to address any questions. Oh, you know one other point I want to make about this? This whole thing about this regulation, you have to remember the posture that this came to us in. You know, summary judgment was already decided by the district court. All this came in afterwards in this motion for reconsideration. And, you know, the standard for motion for reconsideration is that it's got to be something that could not have reasonably been brought to the court before then. The Department of Labor has argued in a brief this has been on the books since 2000. This was, you know, well within the grasp of opposing counsel to bring to the attention of the district court at the summary judgment level. This came in a motion for reconsideration. Thank you very much. There was a summary judgment motion, and this was in a motion to reconsider the summary judgment motion? That's correct. None of this stuff about the Department of Labor's position about how this only applies to multi-employer plans, the quarterly meeting rule only applies to multi-employer plans, that was not asserted in opposition to the summary judgment motion. All that stuff about the Department of Labor's regulation and frequently asked questions came later. You know, if the purpose is for plans to be able to administer themselves in a way that preserves the assets so that they can pay claims of beneficiaries, it's really unfair to require plans to not only follow through the threat of this regulation, but then also turn to this 65 Fed, Reg, whatever, where this preamble appears in this footnote of like a 75-page document to try to figure out are we understanding this correctly when it clearly says we get the benefit of the quarterly meeting rule. Is it really fair for plans to have to pay lawyers to go read the Fed, Reg also, this multi-page document to try to figure out is this really what they meant when they said we get the benefit of the quarterly meeting rule? Thank you very much, Professor. Thank you. Who's going to do the rebuttal? I'll do it. Okay. That's all right with you, Mr. White? Your Honor, just as a preliminary comment, I'd like to point out that if you look at the text of the plan which is contained in the appendix, they don't even comply with the quarterly meeting rule, which I'm sure counsel for the plan does not dispute is in the regulation. Their rule as drafted states that the decision will be made at the next regularly scheduled meeting. Without regard to the word quarterly, that's one of the terms of their plan that does not comply with the claims reg. The defendant's argument that they're entitled to use the quarterly meeting rule because Section I-3 refers to the general rule, I-1, which is not restricted, admittedly is not restricted to multi-employer plans, ignores the text of the general rule, which starts with except as provided in I-2 for health care claims and I-3 for disability claims. It also ignores the plain language of the second paragraph of I-3 itself. I-1 is the general rule. I-3 is the specific rule. Under ordinary standards of statutory construction, the general control the specific controls the general. And the defendant's argument subverts the text and the purpose of the regulation and ignores both the explicit text of I-1 and the explicit text of I-3. It ignores the preamble. It ignores the department's subsequent guidance. And it inverts the normal principles of statutory construction. This is a large plan with many participants. I'm sure that the — it isn't burdensome for the defendant to — for this administrator to have familiarized itself with the claims regulation and the preamble. But even if it had, there are several provisions that flatly contradict the exact language of the claims regulation in this plan and without resort to the preamble. Thank you very much. Thank you. Mr. White, Mr. Begley, thank you. The case is started. You just submitted it.
judges: Wallace, Noonan, Silverman